2017-18-08 Good morning. May it please the Court, I'm Alexis Mosser. I'm here on behalf of the appellant, Chestnut Hill Sound, Incorporated. Ms. Mosser, if we disagree with your three claim limitations that you dispute on appeal, do you agree we don't have to address your conditional invalidity arguments? If you disagree with my claim construction arguments, all three of them, then it's dispositive, Your Honor, and there's nothing left to decide. But I am here about three claim construction issues, and I think that the board below did us a disservice by evaluating these claim construction issues not in the totality of the multimode media device that we disclosed, but rather in a very piecemeal fashion, and they also did so backwards. They started with one of the last limitations in the second mode as the very first thing that they reviewed, and by doing so, it tainted the entire review by the board. A more appropriate place to start, and where I'd like to start with you today, is with the first limitation, which is the configuring selectively limitation. I think this limitation frames how the device works in a two-mode fashion, and if we step through some of the prosecution history, it allows the court to see that in light of the prosecution history and the specification, we're not asking you to read a limitation into this claim. We're simply asking you to read the claim in light of the specification. Let me ask you a few questions, because there's a few gaps here in terms of your discussion, and maybe you all understand these things and agreed on them, but what do you define the media device to be in the context of this claim? The media device is, of course, claimed in Claim 22, Your Honor, but there is a preferred embodiment disclosed, but there are several ways in which this can be. So is the media device just the base unit, or is the media device the base unit plus the additional? In the preferred embodiment, the media device would be the totality of the base unit with the detachable remote, and something can be plugged into the ASM, such as an iPod, which we disclosed, which would also be considered part of the base unit. That's a very important question. There are other alternative embodiments. For instance, with the way that iPods and iPads work, you can plug in a smartphone or an iPod with an app, and that could be your base unit. As long as it engages in all of the operations that are in Claim 1, and it's structured in the same way as Claim 22, it doesn't have to be the preferred embodiment that at the time was what we considered a revolutionary product of George. What else is missing here is the question of, there was no discussion of what configuring means in this context. What do you think configuring means? Configuring was not raised as an explicit term to be construed, and so I think that the record is not quite as clear as it could be. Do you have any evidence showing that a person of ordinary skill in the art would understand that configuring is to operate in a first and second mode selectively, requires both modes to be made available for selection by an actor? Yes, Your Honor. I can point you first to the specification itself, which talks about the ways in which the processor is configured to execute these operations, and how the device can be programmed. And then for the actual act of configuring selectively in the method claim, I can point you to... Will it be column 18? In the patent, Your Honor? The user can select one of the inputs. That's one of the ways that can be actively selected, which is what I believe initiates the configuring. That's column 16, lines 48 through 50. The description of the processor is a more generic claim of a processor, but it has to be programmed, as it says in claim 22, or configured to choose between the first mode and the second mode selectively. The software executing on a processor, this talks about the operations that might be performed in column 7, at the top of the column, when the processor is getting input from a source such as a remote source. It talks about the network adapter, which would help it operate in the second mode. Where in the record before the PTAB did Chestnut Hill seek the construction for replacement of sequential operation, or requirements of sequential operation that it's seeking now? I think that's inherent in how we discuss the configuring selectively limitation. We say in the transcript that the configuring selectively has to occur as a predicate to any of the operations that happen in the subsequent modes. You can't get into the first mode or the second mode unless you've selected a source. If you look at appendix 820, the office action reply, this is discussed explicitly. After an interview with the examiner, it was a suggestion from the examiner that the applicant amend the claims to say that there is a command selectively sent in the second mode to a selected source. But the applicant pushed back and said it's not that it's sending it to a selected source, it's that the source was previously selected. There's this language on the next page that says the device commands a specific selected media content source to deliver requested content in response to user input of the media device. So unless you've made that decision already, unless you've selected a source above, you can't even be operating in the second mode. Unless you've selected the local source of the media device itself, you can't be operating in the first mode. These claims are all interrelated when you look at them, and that's why this piecemeal evaluation is not helpful. Because if you look at the list limitation, which is the second argument in the first mode, that's an exclusive limitation. You're only displaying content which is stored locally on the media device. And if you expand that limitation and you try and encompass any content that can be stored anywhere, you're essentially eviscerating what it means to be a multi-mode media device. The board suggested a construction of mode, which is a descriptor that identifies different behaviors with the behavior of each mode specified by other claim language. And we didn't appeal that construction, because that construction isn't inherently wrong, as long as the operations of a given mode are exclusive to how you access the content. So you're saying the list only relates to the first mode? Yes, Your Honor. The list has to be exclusive to the first mode. And there's support for this in the record itself. In the prosecution history at 875 to 876, they discussed the Walsh was an older version of a cell phone that couldn't store content on the device. So it couldn't display a list. And Apple has argued, well, it didn't even meet the limitation as you stated. And of course, that's true. However, when we were describing why it didn't meet that limitation, we went on to say that, examiner, although you've said a database on a server could be part of the list that's displayed, the server is not even, in fact, part of the media device, and is thus relative only to the second mode of operation. So when we're describing our own claims and how they should be interpreted, we have a very bifurcated understanding of how these modes operate. And I think this is very similar to DiAgostino. In that case, there was a single merchant limitation. And the court found that the single merchant was not a function of identity, as the board said. But instead, it was a function of numerosity, as DiAgostino had said in his arguments before the board. Claim six reads in part, in quote, in the second mode, the selected media source downloads or streams the selected media content to the device. And the device sends media content to an output unit that is separate from, i.e. not from, the device for it outputting. Isn't that the exact indirect type download that you argue on appeal is excluded from the purported invention? It is exactly that type, Your Honor, yes. And I would say that there are 22 claims that were added that this footnote about claim differentiation applied to. There are 10 claims that we aren't discussing here today that this differentiation statement in the prosecution history could apply to. The 12 that we are discussing that this differentiation doesn't apply to are the ones that did impermissibly broaden the scope of claim one. And I would of how the system works with the examiner at 820. There, the examiner pushes back on this idea of requesting that content be transmitted. And instead, we amend to say, commands to the selected remote media source are issued by the media device. So it's not a request or a push system from the server back down to the media device. It's what's called a pull or on-demand system, as is described in the specification at 322 through 25. So the intent is the content can be managed locally, but you send it to various places around your house. And the problem with inferring that you can do it in the way in claim six or having it go back through the media device is it completely eviscerates what the point of this invention is. This invention is designed to improve the access and ease of use for managing a large media library. If you are, as we suggest, able to put content in five different rooms of your house, but you're running it all through your iPod, you're not getting reduced latency. You're not getting a better user experience. Instead, you want something where the server pushes it out to five different locations, or 10, or however many you want. And this makes this accessible because, as in the title says, we use the metadata. And the metadata comes back and forth between the media device and the server, but no content. And I'd like to point you, briefly, since we're having this discussion, to the reference, Co, which we discussed. Co was cited in our prosecution history as an anticipatory reference. The examiner thought we were doing exactly what Co was. Co is a patent filed by Apple. And in their patent, if you look at their claims, which are on page 27 of my briefing, and the figure, which is on page 29, this is exactly what happens in claim one. Nothing comes back to, in Co, the portable multimedia player, and nothing comes back to our media device. It's streamed from the media server to the media unit. If the examiner thought that this was an anticipatory reference, and we discussed it as being so, this is clearly, from our specification, how we think our invention works. Apple is seeking to apply to our invention patent tenants and claim construction tenants, which we only use in the absence of record evidence. But there's ample record evidence, and I believe that they should have to account for why our claims should not be read in this light, versus in the hindsight, biased manner that BDM had led them to. If there are no more questions, I'd like to reserve the remainder of my time for rebuttal. We will do that, Ms. Melissa. Thank you, Your Honor. Ms. Brooks, good morning. Thank you, good morning. May it please the Court. May I proceed? Yes. Thank you. I'd like to start where counsel left off, which is in their reference to Coe and the argument about Coe. As we point out at page 41 of the red brief, this is a new argument that has been made on appeal and was not made before the Board, and therefore is waived. But even if the Court wishes to consider it, all that reference speaks to is that the claims cover sending the information directly to a speaker. But again, that doesn't mean it excludes any indirect transmission. And in fact, if you look at BDM and the evidence that we presented to the Board, in BDM there is both direct and indirect transmission. So even if the Court were to accept appellant's new construction made for the first time on BDM, BDM still would anticipate and therefore or render the claims obvious. What is your response to the question of how the term media device is understood in the patent? Your Honor, my response is that Your Honor's question was excellent. There was somewhat of an answer from Chestnut Hill. That same question was posed to Chestnut Hill below, and the answers keep changing. Can the media device be just a single device that somehow has the ability to both access local content and remote content? I guess the answer is yes. According to Chestnut Hill, does it become the media device when there is a control that is then docked? And does that then become one? Chestnut Hill says yes. Sometimes other times they've said no. That in fact, it's upon docking, you now have the ability to play in a first mode, and upon undocking, you now have only the ability to play in a second mode. So I can't affirmatively answer your question as to what Chestnut Hill defines as the media device because it keeps changing. Let me follow up on something you just said. One of the things that you argued was that when the other device, the iPod or whatever it is, the things that my kids used to load up with music for me because I didn't know how to do it, but when that's removed, then it will automatically choose the second mode. But I don't understand how removing that isn't the same as a user selection. In other words, the user removes it and then therefore understands that there's only one mode of operation. And that was a DDAR argument below, exactly that, that when the user removed it, you had a user, I wouldn't say consciously selecting, but the user was implicitly changing it then from a first mode to a second mode, but not consciously. And that's the second problem we have here, which is that Chestnut Hill's proposed constructions have been a constantly moving target. Below, it was argued that the user must knowingly, must be presented with two modes and must knowingly select that mode, one of two, and then the device is configured to operate in a first mode or a second mode. That argument was rejected by the board. The argument that's now being made in the appeal, especially in the reply brief is, it's irrelevant who or what, this is on page three of the gray brief, who or what makes the selection. The only issue now is that a selection is made. And I think the reason we've gotten into this confusion is because Chestnut Hill has essentially, especially on appeal, changed the limitation that the court is being asked to look at. Chestnut Hill characterizes the limitation as configuring ellipses selectively. And that is 17 times in the reply brief alone. That is their characterization of the limitation. The limitation, however, is not that. What's in the ellipses is the following language, configuring the media device to operate in a first mode and a second mode selectively. That media... But your reading would take the word selectively pretty much out of it. I would respectfully disagree, Your Honor, in that without the word selectively, then what we have is a device that's configured to operate in a first mode and a second mode, possibly simultaneously. And so selectively modifies to operate. It doesn't modify configuring. And that's why by Chestnut Hill taking all that language out, it sounds like selectively turns into selecting, which then in turn selects the configuration. And that's not what the limitation is. So what we really have here is a media device, according to the claim, that is configured to operate in a first mode and a second mode. Now, that's contrasted with Walsh that Appellant talked about. Walsh could only do remote. And so it only had one mode. It didn't have that first mode of playing local content. So that's where Walsh gets distinguished. So what we have to have here in order to meet the limitation and what VDM has is, is it a device, a media device? Has it been configured to operate in a first mode and do all the three things that's required by the claim in the first mode, and to operate in a second mode and do all the three things that are required in the second mode? Who is exactly practicing this method? The device or the user? Well, it's a method for configuring a device. So I assume it then would be the device. That's I can't necessarily justify poor claim drafting, but it is drafted as a method for configuring a media device to be able to operate in these two modes selectively, meaning one mode or the other mode. Is there a separate apparatus patent for this device? I don't know that, Your Honor. I don't know the answer to that. I just know what we were dealing with here is this method for configuring a media device. It's pretty silent as to how, when that configuration takes place. Logic would tell us, and we're talking about broadest reasonable interpretation, so reasonable logic would tell us that as long as the device is configured at some point at manufacture, at the time it is programmed, at the time that an action occurs that, for example, VDM, what happens is the device is configured such that if you select a song that's stored locally, that song is going to play. If you select a song, unbeknownst to you, you don't care where it's stored. If you select a song... Or maybe you do care where it's stored. That's just one of my problems is maybe you do care where it's stored because maybe you're not one of those people that has Spotify or anything else so that if you're pulling music in from the internet, you're paying for it as opposed to something you've already gotten and it's already been downloaded. And so why wouldn't you care? Unless you're 25. And you've got your mother's credit card, which is my situation. If you ask my children if they care, they'll tell you no. But let's say you do, for monetary reasons, care. There's nothing in the patent that discusses that. There is nothing in the patent that requires that... I mean, isn't that the whole point of the patent? No, I would disagree, Your Honor. I think the whole point of the patent is to give a device that is configured to allow the user to either access local content or access remote content and then have it streamed. Not a device that would allow you to do just one or the other, but in fact, both selectively. And also provide selectively so that you choose the one you want to do so that somebody like me who wants to listen to a preset list listens to that on their whatever device you have docked, and somebody like our kids who wants to go out and pull all kinds of things that we wouldn't even know exist by way of music from the Internet and pay for it can do that. So you've got one device that covers the whole family. But wouldn't it be important if you're the user to know, to be able to decide which one you want to do? I don't believe so, Your Honor, at least as far as this claim is concerned. They certainly could have read that and limited the claim to a user knowingly, and that was originally what they argued, that a user knowingly had to do that. They're no longer arguing that. In fact, at page three, they say it doesn't matter. It doesn't matter who or what does the selecting. So it doesn't even have to be a user anymore. It could happen automatically. And all we're doing is asking, was the Board reasonable when the Board, under the broadest reasonable interpretation, interpreted the claim not to require that it be a conscious choice by a user to select a mode? And the answer is yes, based on how the claim was written. And the way it was written is a configuring claim, and I know this came up in the last argument. Does configuring then open the door to everything and anything? And the answer is no, it doesn't. But what Chestnut Hill specifically said in using the term configuring is that by using that term, and I want to get their language specific, by using the term configuring, you then are not limiting it to just what is in that particular term, but also anything, any additions to that term. Here we go. It's at column six, lines 27 through 30. It says the use of including, or comprising, I'm sorry, comprising, having, containing, involving, and variations thereof is meant to encompass the items listed as well as additional items. And so what Chestnut Hill was very careful to do is say our claims are very broad. And this is what happens when you're walking that fine line between wanting to cover your prior art and wanting to cover your prior art. And that is exactly, they didn't want to be limited to give Apple an opportunity to say, wait a minute, we don't infringe because the claim implicitly requires the user to knowingly select the mode and thereby configure that mode. Their answer would be no, it doesn't. You don't read that anywhere in here, and it's a comprising claim. That doesn't even have the first mode, does it? The VDM most definitely does, Your Honor. It has the ability, depending on which song the user chooses, to either access it locally, if it's stored locally, or to access it remotely if it's not stored locally, it's stored remotely. So yes, VDM most definitely has both modes, and that's the critical nature of it. You have a footnote that you drop and say that if we disagree with any one of these, because you have to win on all three, but if we disagree with any one of these, that we should remand because there are other arguments for why it would be obvious in any event. You want to expand on that? Yes, Your Honor, I do. For example, let's talk about list. The Board found quite clearly that list had to contain local content. No doubt about that. You read the limitation, it says a list of local content, but it did not exclude containing other, for example, remotely stored content. And so, if in fact, and that was the argument that was very clearly made before the Court. Is this an exclusive claim, or is this an exclusive claim? If we look at column four, lines 30 through 35, appellant talked about having only a single frequency selection knob. Column 10, lines 26 through 29, having only stations broadcasting on AM. Column 11. There's a lot of language that surrounds this limitation. When in the first mode, the device displays a list of digital media content stored on said media device to the user. Now, in this case, the media device is what? I would submit one would have to ask Chestnut-Hill that, because they've given different answers. They've said the media device could be just the iPod alone. The media device could be the iPod when attached to the base unit. But I mean, doesn't that surrounding language indicate that the media device is playing only on-device music when in that mode, and the list is only the on-device list? No, I would beg to differ, Your Honor, and here's why. It talks about displaying on a display of the media device a list of digital media content stored on said media device. It doesn't say only content stored on said media device. It could, in fact, be content that is also stored remotely. So, the list is not, and there's no language used that says it is exclusive. And, in fact, the language that I read here... So, you're saying that you get this list and you've got a list, what, of there and everything else that's possibly on the Internet? It would be a list, for example, that VDM has. VDM has a list of both locally stored and remotely stored content. And if we look at the limitation... When you say remotely stored, what are you talking about? Stored where? Stored, for example, that you would access via the Internet. That's one example. So, like every piece of music in the Internet? I don't know how broad we would get, Your Honor, but VDM certainly has both. It has... So, somebody looks at their list and the list is uncontained. Is that what you're saying? No, that is not what we're saying. We're saying the question before the Board was, when this language is used, this limitation, talking about a list of digital media content stored on said device, if there's anything else added to that list, then that limitation is no longer met. That's what the argument was made below. But under your theory, though, it would have to be everything in the world is added to that list. No, I don't agree. Let me give an example. If Your Honor has asked me to give you a list of judges sitting on this Court, and I gave you a list, an ordered list, and it listed all the judges that are presently sitting on this Court, and I added to that list judges who are set to sit by designation next month, from the District Court, who are set to sit by designation, or I added to that list judges whose nominations are presently pending still. That's right, but you're not talking about adding ten things. You're talking about adding an undefined, expansive universe of things. No, we're not. If you added to that list every person that exists in the world, then it would be hard to figure out where the judges fell in that list, right? Agreed, Your Honor. We're not talking about adding anything infinitely, because we're really talking about this then in the context of VDM. And what does VDM have? Does VDM cover this claim or not? And the answer is it does, because it has a list of locally stored content, and within that are also songs that are remotely stored. Not all the songs in the world, but certainly songs that are not just locally stored. And the argument made by the appellant is, therefore, VDM doesn't cover this limitation, and we're saying it does. And I apologize, because I digress from Your Honor's original question, which is, we said the appropriate remedy would be to remand, not to reverse, the reason being that issue was never put before the board, which is, if the court should find that the appropriate construction is that it has to be an exclusive list of only media stored locally, then the board would be posed with the question, would it have been obvious to make taking the prior part, and make an alteration to include remotely stored? The board never reached that. And I apologize that I digress from Your Honor's original question, but that's our answer. That's one example. Here's another example. Let's go to the next limitation, direct versus indirect. And so the board found that, again, it wasn't exclusive. It wasn't limited to only direct transmission. It could also be indirect. If this court should find that no, the board was wrong, it should only be direct, then it should be remanded, because VDM, and we presented this to the board, VDM actually shows direct transmission also. Was that discussed by the board? No, because, again, they found it could be both direct and indirect. But should Your Honor's find direct transmission? Thank you. Counsel, as you can see, you're running out of time. Oh, I'm out of time. Let's hear Ms. Moser. Thank you, Your Honor. Thank you, Your Honor. Chestnut Hill argues that the PTAB erred in failing to explicitly construe the causing to download or screen limitation. Where does it offer a claim construction for that? I don't know that we argue a specific claim construction, Your Honor. I'm sorry, I don't have a site available. I think that we didn't argue many claim constructions, but rather we are objecting to, if you're going to construe these claims, we think no claim construction is necessary, then the way that you have done so is erroneous. And that's why we've outlined on appeal why specifically these claim constructions are erroneous. And I'd like to talk about a few things that came up in the... a few things I'd like to clear up. First of all, this docking issue, this issue of docking is completely a red herring. If you look at the specification, there's a statement that says, when regards to the detachability of, for instance, the front-facing piece of this, that you can detach it and there can be a link between the remote control and the larger base, and otherwise the system functions the same as in the undocked arrangement. We are not seeking to have a wishy-washy statement on what a media device is. Apple is seeking to require us to choose the preferred embodiment claimed in the specification as the only embodiment. And that's simply not how patent law works. There are several embodiments. You can use your iPod with an app, and as long as the app is performing these operations, it's practicing this method. As to the fact of whether there's a media device claimed, claims 22 and 51 include a media device and a media player. So those claims themselves do not require a base unit. They don't require a detachable remote. They require a processor that's able to do these configuration selectively limitations. I'd also like to discuss that configuring selectively limitation. The ellipses are there not because we don't want to talk about what's in the middle, but because saying, configuring a media device to operate in a first mode and in a second mode selectively is quite a mouthful. The selectively comes after the comma at the end of that phrase. If, as Apple suggests, it's supposed to modify the operation of the device, it should come after to operate. Configuring the media device to operate selectively in a first mode or a second mode, but it doesn't. And in Apple's briefing, they have this line about, well, you're really configuring it to be able to select something, but that's not what the prosecution history reflects. And Apple doesn't have a really great response for this because the prosecution history is really clear. In that page 820, when it talks about Walsh, they say to the examiner, listen, your commands selectively to the second mode sources is great, except for the fact that that's not what we're talking about. Selectively happens up here because you have to have picked a source. And you can see that in the claim language of claim 1 because in those operations, in the mode 2 operations, that last part, it says to a selected... Sorry, I'm going to read it too explicitly. What do you mean selectively happens up here? What does that mean? In the configuring selectively limitation step, that's where that happens. And you can see this in the second mode where it says a separate selected first media source or a separate selected second media source in the second mode. And the reason they had to put that distinction in there was because these selected sources was one over a local area network or one over a network, just like you said, John, or the kids downloading everything from iTunes. And so you had to have selected which of those sources you wanted to access content through. That inherent selection, the inherent selection is clear in the record, in the specification, in the prosecution history. And this part that they point you to, it's footnote 3 they're hanging this argument on about this selectively assertion that they're making. But if you look at pages 820 and 821 of the specification, footnote 3 is dropped from this larger sentence that says, nonetheless, to advance prosecution, all of the independent claims are amended herein to make it clear that the device commands a specific selected media content source to deliver requested content in response to user input at the media device. And this question also of, gosh, we can't figure out what's doing the operations, is also a red herring. Because if you look at the language in claim 1, it's very clear, and I'll get to the user issue if you'll, I'm very sorry, give me a little extra time, but it's very clear in the language of claim 1, it's not a method of configuring the media device. It's a method of using the media device. The configuring selectively happens as a predicate operation after which the subsequent operations happen. And the logic and structure of this, that's Mantec and Interactive Gift provides me with that, has these segregated, you look at the claims, there's a big A and a big B. The operations of A are the first mode, the operations of B are the second mode. So whether you don't want to access remote content because your kids spend too much money, or you don't want to access remote content because maybe you're in a place with no Wi-Fi and you can't reach it, selecting the mode, or selecting the source by this, excuse me, selecting a source acting as the proxy for this mode selection is critical. And then this last issue about how we didn't raise this argument is also a red herring. If you look at the transcript from the oral argument, it's this conversation that they selectively quoted to you. And the remainder of that selectively quotation, which I'll find the reference to, is that, yes, we raised the issue of this selection, this configuring selectively has to happen, but that configuring selectively, whether it's done by the user or it's done by some other thing, is ancillary to the larger argument. Where are you in the appendix? That is appendix 3824 at 5411 to 20. Sorry, I had to find the reference here, Honor. Thank you, Counsel. As you can see, there will be a time we will take the case under review. Thank you. It's been a pleasure. I wouldn't even know if I was back at the trial level. I would have been making a continuing record of your hand gestures. I'll work on that for next time. I appreciate the critique.